[4 NYS3d 267]

GOVERNMENT EMPLOYEES INSURANCE Co. et al., Appellants, v
AVANGUARD MEDICAL GROUP, PLLC, Respondent.

Second Department, February 18, 2015

## APPEARANCES OF COUNSEL

*Melito & Adolfsen, P.C.*, New York City (*Louis G. Adolfsen* and *S. Dwight Stephens* of counsel), for appellants.

*Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Einiger, LLP*, New York City (*John Belesi* and *David Verschell* of counsel), for respondent.

*Greenberg Traurig, LLP*, New York City (*Francis J. Serbaroli* of counsel), for amicus curiae New York State Association of Ambulatory Surgery Centers, Inc.

## OPINION OF THE COURT

BALKIN, J.P.

This appeal presents an issue of first impression, namely, whether a no-fault insurer must pay, as a component of first-party benefits for "basic economic loss" (Insurance Law § 5102 [a]), a facility fee in connection with "office-based surgery" performed in a practice and setting accredited under Public Health Law § 230-d (1) (h). A facility fee is a charge for the use of a medical facility and its staff and equipment. It is separate from the fee to which a physician or other medical professional is entitled for performance of the medical procedure itself.

The No-Fault Law (Insurance Law art 51) and its implementing regulations specifically provide that the operator of a hospital or "ambulatory surgery center," both of which are established under, and subject to, the comprehensive statutory and regulatory framework of Public Health Law article 28, may properly bill a no-fault carrier for facility fees (*see e.g.* 10 NYCRR 86-4.40). There is, however, no provision for recovery of a facility fee for the performance of an "office-based surgery" performed in a practice and setting accredited under Public Health Law § 230-d (Public Health Law § 230-d [1] [b]). Public Health Law § 230-d, which is not contained in Public Health

Law article 28, imposes a substantially more modest level of oversight and regulation than article 28. We hold that, absent express statutory or regulatory authorization, a no-fault insurer is not required to pay a facility fee for office-based surgery performed in a practice and setting accredited under Public Health Law § 230-d.

Mark Gladstein, an anesthesiologist, performs "office-based surgery" (Public Health Law § 230-d [1] [h]) at an office in Brooklyn owned by the defendant, Avanguard Medical Group, PLLC.[1] Dr. Gladstein is an owner of Avanguard. It is not in dispute on this appeal that Dr. Gladstein's medical practice is accredited under Public Health Law § 230-d for the performance of office-based surgery (see Public Health Law § 230-d [2]). It is also not in dispute that Avanguard's Brooklyn office is accredited as a setting for office-based surgery (see Public Health Law § 230-d [3]).

Dr. Gladstein bills for his performance of office-based surgery through a professional corporation, Metropolitan Medical and Surgical, P.C. Separate and apart from that billing, Avanguard seeks to collect a facility fee from no-fault insurers for the use of its Brooklyn office where the office-based surgery is performed. The facility fee is a charge for the cost of providing "technicians, medical assistant[s] . . . [and] equipment," such as X ray and ultrasound equipment, for office-based surgery.

In 2011, the plaintiffs—Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Co., and GEICO Casualty Co. (hereinafter collectively GEICO)—commenced this action against Avanguard seeking a judgment declaring, in essence, that GEICO is not required under the No-Fault Law and regulations to pay a facility fee for office-based surgery performed at Avanguard's office. Avanguard had named GEICO as a defendant in numerous actions and arbitrations in which Avanguard sought to collect facility fees after GEICO refused to pay such fees. In 2012, GEICO moved in this action for a stay of numerous related district court and civil court actions and arbitrations, and for a preliminary

1. Under Public Health Law § 230-d (1) (h),
" 'Office-based surgery' means any surgical or other invasive procedure, requiring general anesthesia, moderate sedation, or deep sedation, and any liposuction procedure, where such surgical or other invasive procedure or liposuction is performed by a licensee in a location other than a hospital, as such term is defined in article twenty-eight of this chapter, excluding minor procedures and procedures requiring minimal sedation."

injunction against the commencement of new actions and arbitrations, pending the determination of this action. The Supreme Court denied GEICO's motion (2012 NY Slip Op 31516[U] [2012]), and GEICO appealed from that determination (*see Government Empls. Ins. Co. v Avanguard Med. Group, PLLC*, 125 AD3d 803 [2d Dept 2015, No. 2012-06819] [decided herewith]). GEICO subsequently moved for summary judgment declaring that it is not required to pay facility fees for office-based surgery. In the order appealed from, the Supreme Court denied GEICO's motion, in large part on the ground that its denial of the motion for a stay and preliminary injunction was, in effect, the law of the case (2013 NY Slip Op 33849[U] [2013]).

To determine whether a fee for the use of medical facilities may be reimbursed as a component of "basic economic loss," we need to examine the meaning of "basic economic loss." Under the No-Fault Law (Insurance Law § 5101 *et seq.*), an insurer must pay first-party benefits of up to $50,000 per person to reimburse a person for covered "basic economic loss" (Insurance Law § 5102 [a]), subject to the limitations of Insurance Law § 5108. One of the components of basic economic loss is, as relevant here, "[a]ll necessary expenses incurred for . . . medical, hospital . . . , surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services . . . and . . . any other professional health services" (Insurance Law § 5102[a] [1]).[2]

Insurance Law § 5108 provides, with some exceptions, that charges for services covered under Insurance Law § 5102 "shall not exceed the charges permissible under the schedules prepared and established by the chairman of the workers' compensation board for industrial accidents" (Insurance Law § 5108 [a]).[3] Where workers' compensation schedules have not been prepared for certain services covered under Insurance Law § 5102, Insurance Law § 5108 requires that the Superintendent of Financial Services establish schedules after consulting with the Chairperson of the Workers' Compensation Board and the Commissioner of Health (*see* Insurance Law § 5108 [b]). The implementing and coordinating regulations of the

---

**2.** Insurance Law § 5102 (a) (1) also encompasses psychiatric treatment, physical therapy, and occupational therapy and rehabilitation, as well as certain nonmedical remedial care and treatment in accordance with religious methods of healing (*see* Insurance Law § 5102 [a] [1] [ii], [iii]).

**3.** The workers' compensation schedules are referred to in the regulations of the Commissioner of Labor and incorporated into that regulation by reference (*see* 12 NYCRR 329.3).

Department of Financial Services[4] 11 NYCRR 65-3.16 (regulation No. 68-C, "Measurement of no-fault benefits")—refer, in turn, to "Regulation [No.] 83." Regulation No. 83 (11 NYCRR 68.0) adopts the workers' compensation schedules that were already in existence (see 11 NYCRR 68.1 ["Adoption of certain workers' compensation schedules"]; 12 NYCRR 329.3 ["Medical fee schedule; incorporation by reference"]), and establishes schedules for services not already contained in workers' compensation schedules (11 NYCRR 68.2 ["Establishment of certain health provider schedules"]).

The fee schedules do not provide for facility fees for office-based surgery performed in a practice and a setting accredited under Public Health Law § 230-d. Nonetheless, Avanguard contends that facility fees are included within the Insurance Law § 5102 definition of "basic economic loss" because they are a "necessary expense[ ] incurred for . . . medical, . . . surgical [and] nursing . . . services" (Insurance Law § 5102 [a] [1]). Further, Avanguard points out that regulation No. 83 includes a default provision in recognition that not all covered services will be contained in the applicable fee schedules. This provision—11 NYCRR 68.5 ("Health services not set forth in schedules")—provides a mechanism for determination of appropriate fees for those services that are included within the definition of "basic economic loss" but are not contained in a schedule. Avanguard contends that, under this "default" regulation, it is entitled to a facility fee and that this fee is the same fee provided to ambulatory surgical centers under article 28 of the Public Health Law.

Avanguard's contention is untenable. First, Avanguard fails to take into account that the definition in Insurance Law § 5102 of "basic economic loss" expressly incorporates the limitations imposed by Insurance Law § 5108. As previously discussed, Insurance Law § 5108 provides that, with only limited exceptions, charges shall not exceed the amounts set forth in the workers' compensation schedules. Accordingly, the determination of what is a necessary expense must take Insurance Law § 5108 into account. There is no provision in the workers' compensation schedules expressly providing for payment of facility fees for office-based surgery performed in a practice and setting accredited under Public Health Law § 230-d. The

---

4. In 2011, the Insurance Department and the Banking Department merged into the newly created "Department of Financial Services" (see L 2011, ch 62, § 1, part A, §§ 1, 13, 104 [d]).

absence of such a provision supports GEICO's argument that a facility fee is not a necessary expense for medical services performed by a practice and in a facility accredited under Public Health Law § 230-d.

Moreover, the default provision upon which Avanguard relies is inapplicable, by its own terms. That provision, contained in 11 NYCRR 68.5, provides a mechanism for setting a fee for necessary services for which no fee schedule is specifically set forth in the workers' compensation fee schedules. It says:

> "Section 68.5. Health services not set forth in schedules
>
> "If a professional health service is performed which is reimbursable under section 5102(a)(1) of the Insurance Law, *but is not set forth in fee schedules adopted or established by the superintendent*, and:
>
> "(a) if the superintendent has adopted or established a fee schedule applicable to the provider, then the provider shall establish a fee or unit value consistent with other fees or unit values for comparable *procedures* shown in such schedule, subject to review by the insurer; or
>
> "(b) if the superintendent has not adopted or established a fee schedule applicable to the provider, then the permissible charge for such service shall be the prevailing fee in the geographic location of the provider subject to review by the insurer for consistency with charges permissible for similar *procedures* under schedules already adopted or established by the superintendent" (11 NYCRR 68.5 [emphasis added]).

Under this regulation, a provider may be entitled to reimbursement in situations when there is no fee schedule for a particular service. Avanguard cannot accurately assert that there is no existing fee schedule that determines the amount of a facility fee. Indeed, it is undisputed that Avanguard has consistently billed GEICO for facility fees based on the existing fee schedule and "PAS" codes that are applicable to Public Health Law article 28 ambulatory surgical centers (*see* 10 NYCRR 86-4.1, 86-4.40). Accordingly, there is indeed a fee schedule for facility fees. That schedule, however, is not applicable to Avanguard. Thus, a prerequisite to application of the default provision is absent.

The conclusion that the default provision is inapplicable makes sense in light of its purpose. The default provision relates to particular procedures that do not appear on any existing fee schedule (*see* 11 NYCRR 68.5 [a], [b]). A facility fee is not a fee for a particular medical procedure, but a blanket charge added to the billing for all procedures. In other words, Avanguard contends that, under the default regulation, an entire category of fees should be deemed compensable. We reject such a broad interpretation of the default provision, because the obvious intent of the default provision is to fill in discrete gaps in the schedules, not to make an entirely new category of "service" compensable (11 NYCRR 68.5).

We decline to read the default provision so broadly for another reason. We glean no legislative intent to require payment of facility fees, which are part of the comprehensive statutory and regulatory framework under Public Health Law article 28 pertaining to specific types of medical facilities, to practices and settings entirely separate from Public Health Law article 28. Article 28 facilities are subject to detailed and extensive requirements governing the establishment, licensing, and operation of facilities (*see e.g.* 10 NYCRR 400.18, 709.5; part 755). Avanguard is not an article 28 facility.

Avanguard's remaining contention does not require extensive discussion. Avanguard contends that, in 2007, the legislature created a new class of medical facility, an "office based surgical facility," when it enacted Public Health Law § 230-d (*see* L 2007, ch 365, § 2). Further, it asserts that its accreditation under Public Health Law § 230-d entitles it to a facility fee. As we have already discussed, however, only article 28 facilities are entitled to a facility fee under the existing no-fault laws and regulations. Thus, we need not decide whether the legislature created a new class of medical facility under Public Health Law § 230-d when it required accreditation of practices and settings in which office-based surgery is performed. Further, it would be improper for us, on our own, to determine that a facility such as Avanguard is entitled to a benefit of Public Health Law article 28 when it is not subject to the significant regulatory burdens and costs of that article. Instead, it is for the legislature and the Superintendent of Financial Services to determine whether the laws and regulations should be

changed to entitle an accredited Public Health Law § 230-d facility to a facility fee.[5]

Inasmuch as GEICO established on its motion for summary judgment, prima facie, that it is not required to reimburse Avanguard for facility fees, and Avanguard did not raise a triable issue of fact in opposition, GEICO's motion should have been granted.

Accordingly, the order is reversed, on the law, GEICO's motion for summary judgment declaring that it is not required to reimburse the defendant for facility fees as payable first-party benefits under Insurance Law § 5102 is granted, and the matter is remitted to the Supreme Court, Nassau County, for the entry of a judgment declaring that GEICO is not required to reimburse Avanguard for facility fees as payable first-party benefits under Insurance Law § 5102.

DICKERSON, LEVENTHAL and ROMAN, JJ., concur.

Ordered that the order is reversed, on the law, with costs, the plaintiffs' motion for summary judgment declaring that they are not required to reimburse the defendant for facility fees as payable first-party benefits under Insurance Law § 5102 is granted, and the matter is remitted to the Supreme Court, Nassau County, for the entry of a judgment declaring that the plaintiffs are not required to reimburse the defendant for facility fees as payable first-party benefits under Insurance Law § 5102.

---

**5.** The Office of General Counsel of the Department of Financial Services has opined that the Insurance Law does not require an insurer to pay a facility fee for surgery performed in a physician's office (*see* Ops Gen Counsel NY Ins Dept No. 08-10-06 [Oct. 2008]).