[29 NE3d 881, 6 NYS3d 534]

In the Matter of Mehran Manouel et al., Appellants, v Board of Assessors et al., Respondents.

Argued January 15, 2015; decided February 24, 2015

### POINTS OF COUNSEL

*Schroder & Strom, LLP*, Mineola (*Christopher P. Byrnes* of counsel), for appellants. The hearing officer's decision lacked a rational basis because the subject property qualifies for small claims assessment review. (*Matter of Town of New Castle v Kaufmann*, 72 NY2d 684; *Matter of McNamara v Board of Assessors of Town of Smithtown*, 272 AD2d 617; *Matter of Meola v Assessor of Town of Colonie*, 207 AD2d 593; *Matter of Great E. Mall v Condon*, 36 NY2d 544; *Matter of Troy Props. v Dimitriadis*, 56 AD3d 1086; *Matter of Delaware & Hudson Ry. Co. v McDonald*, 126 AD2d 29; *Town of Tonawanda v Ayler*, 68 NY2d 836; *Matter of Masters v Board of Assessors*, 188 AD2d 471; *Matter of Regenstreif v Board of Assessors*, 20 Misc 3d 787; *Matter of Aerotech World Trade v Excalibur Sys.*, 236 AD2d 609.)

*Carnell T. Foskey, County Attorney*, Mineola (*Martin Valk* and *Brian M. Libert* of counsel), for respondents. I. The owner-occupied requirement under RPTL 730 must be afforded a plain reading because the statutory language is clear and unambiguous. (*Matter of Lauer v Board of Assessors*, 51 AD3d 926; *Matter of Gershon v Nassau County Assessment Review Commn.*, 29 AD3d 909; *Matter of Barbera v Assessor of Town of Pelham*, 278 AD2d 412; *Matter of McNamara v Board of Assessors of Town of Smithtown*, 272 AD2d 617; *Matter of Masters v Board*

*of Assessors,* 188 AD2d 471; *Matter of Regenstreif v Board of Assessors,* 20 Misc 3d 787; *Matter of Town of New Castle v Kaufmann,* 72 NY2d 684; *Matter of Kline v City of Rye,* 150 AD2d 576.) II. Pursuant to the canons of statutory construction the language of RPTL 730 specifically indicates that the legislature intended to exclude homes that are not "owner-occupied." (*Matter of Regenstreif v Board of Assessors,* 20 Misc 3d 787; *Matter of Pierse v Zimmerman,* 255 App Div 708; *Novak & Co. v Travelers Indem. Co.,* 56 AD2d 418.)

### OPINION OF THE COURT

RIVERA, J.

In this appeal concerning the denial of petitioners' application for small claims assessment review of their property taxes under Real Property Tax Law § 730, we conclude that when, as in this case, the property is occupied during the relevant tax period by an owner's relative but not by the owner, the property is not "owner-occupied" within the meaning of RPTL 730 (1) (b) (i). Therefore, petitioners' property does not qualify for small claims assessment review and we affirm the denial of their petition.

Petitioners Mehran and Sepideh Manouel are the owners of a single-family residence located in Nassau County. In 2010, they filed a small claims assessment review (SCAR) petition pursuant to RPTL 730, which provides low-cost, expeditious tax assessment review of certain residential properties. The petition challenged the assessed value of their real property for the 2010/2011 tax year. The Manouels, however, did not occupy the property during the relevant tax period. Instead, petitioner Mehran Manouel's mother lived in the residence, rent-free. Respondent County of Nassau requested disqualification of the petition for lack of jurisdiction, arguing that the property did not qualify for the SCAR program because it was not owner-occupied by the Manouels during the tax year in question, as required by RPTL 730 (1) (b) (i). The SCAR hearing officer agreed and ordered the petition disqualified.

Thereafter the Manouels commenced a CPLR article 78 proceeding challenging the hearing officer's decision as arbitrary and capricious, and without rational basis. They argued their property came within the statute's coverage because the owner-occupancy requirement was designed to exclude income-producing properties from SCAR, and the statute should therefore be read to encompass properties, like

theirs, which are occupied rent-free by the owner's relative. The County moved to dismiss again arguing the petition lacked a jurisdictional basis. Supreme Court concluded the hearing officer's determination was proper, granted the County's motion, and denied the petition and dismissed the article 78 proceeding (*Matter of Manouel v Board of Assessors*, 2011 NY Slip Op 34171[U] [2011]).

The Appellate Division affirmed, finding the Manouels did not reside on the property and no evidence established the mother's residence was merely temporary. Therefore, the Manouels failed to comply with the clear and unambiguous statutory requirement of RPTL 730 (1) (b) (i) that the owner occupy the premises (*Matter of Manouel v Board of Assessors*, 111 AD3d 735 [2d Dept 2013]). We granted the Manouels leave to appeal (22 NY3d 862 [2014]).

The Manouels argue that they should be able to avail themselves of the SCAR program because the statutory language should be interpreted to include noncommercial property occupied rent-free by their close relative. The County responds that by its plain language, and as confirmed by the statute's legislative history, RPTL 730 (1) (b) (i) is limited to properties that are owner-occupied. Therefore, because the Manouels concede that they did not occupy the premises during the relevant tax period, the property is beyond the scope of the statute. We agree with the County.

In determining the meaning of the statutory language at issue we adhere to the well established principle that "where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used" (*Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d 55, 60 [2013] [brackets and citations omitted]; *see also* McKinney's Cons Laws of NY, Book 1, Statutes § 94, Comment ["The Legislature is presumed to mean what it says, and if there is no ambiguity in the act, it is generally construed according to its plain terms"]). According to the RPTL, an owner may petition for property tax review under the SCAR program provided that "the property is . . . improved by a one, two or three family owner-occupied structure used exclusively for residential purposes" (RPTL 730 [1] [b] [i]). The "owner-occupied" language in this section is unambiguous, and the import of its ordinary meaning is that the person with ownership rights must be in occupancy of the subject property in order to petition under the SCAR program.

The choice of the word "owner," which is legally understood to mean the holder of certain superior interests in property (*see* Black's Law Dictionary [9th ed 2009] [defining owner as "(o)ne who has the right to possess, use, and convey something; a person in whom one or more interests are vested"]; *see generally* 1 Rasch, New York Law and Practice of Real Property §§ 2:1, 2:2, 2:4), when used in section 730 (1) (b) (i) to modify the type of occupancy required by the statute means that section 730 excludes property occupied solely by persons with rights inferior to those of the owner. Moreover, because the statute lacks any reference to occupancy by persons other than owners, we presume the legislature intentionally omitted non-owner occupants from coverage (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 74 ["the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended"]) and accordingly, we decline to "read into the statute that which was specifically omitted by the legislature" (*Commonwealth of the N. Mariana Is.*, 21 NY3d at 62). The statute's unambiguous language thus leads to the conclusion that the Manouels cannot challenge the property's tax assessment in a SCAR proceeding because during the tax year at issue they were non-occupant owners of the property.

Nevertheless, in support of their argument that we should attach a more expansive meaning to "owner-occupied" than the words may suggest, the Manouels rely on *Matter of Town of New Castle v Kaufmann* where this Court stated that "literal and narrow interpretations [of statutes] should be avoided" where "such a construction would thwart the settled purposes of the statute" (72 NY2d 684, 686 [1988] [citations omitted]). The Manouels contend that in order to effectuate the purpose of the SCAR petition process, the statutory term "owner-occupied" should be liberally construed to include property, like theirs, occupied by the owner's non-rent-paying relative. They argue that such construction is faithful to the legislative intent to deny owners of income-generating properties access to the SCAR program, presumably because such owners could afford a traditional tax certiorari appeal. The underlying premise of the Manouels' argument is obvious: owners of non-income-producing properties who allow their relatives to occupy the property rent-free are the types of beleaguered taxpayers the legislature sought to assist when it created the SCAR program. It may be true that the owners described by the Manouels

would be well served by participation in the SCAR program, but that is a far cry from a legally sufficient basis to conclude that they are the intended beneficiaries of RPTL 730.

The Manouels argue that in *Town of New Castle* this Court interpreted RPTL 730 broadly, eschewing narrow interpretations that undermine the statute's primary remedial purposes, and that we should do so again in this case. While the Manouels are correct that *Town of New Castle* took a somewhat broad view of a different section 730 requirement, they are incorrect that the decision mandates we do the same here with respect to the "owner-occupied" requirement.

In *Town of New Castle*, this Court interpreted the residential use requirement of RPTL 730 (1), which limits the SCAR program to property "used exclusively for residential purposes," to also include properties used occasionally or incidentally for nonresidential purposes (72 NY2d at 687). The Manouels argue that we should apply a similarly expansive reading to the statute's "owner-occupied" requirement so as to include properties occupied solely by the owners' non-paying relatives. However, the Court's interpretation of RPTL 730 in *Town of New Castle*, in a manner apparently in contradiction to the explicit statutory text, relied on legislative history and administrative guidance to support the conclusion that a narrow construction of the residency provision would contravene the primary purposes of RPTL 730. Those factors are lacking in the Manouels' case.

As this Court stated in *Town of New Castle*, the legislature enacted RPTL 730 in order to provide a speedy, inexpensive, and simplified real property tax assessment review process for certain residential taxpayers, as an alternative to the complex and expensive formal proceedings provided for under RPTL article 7, which the legislature found to be cost-prohibitive for many homeowners (*see* 72 NY2d at 686 ["The Legislature enacted section 730 to cure this inequity and protect the wrongfully assessed homeowner by affording speedy and inexpensive relief to such persons through a simplified review procedure"]). The legislative history revealed that less than a year following enactment of section 730, the legislature amended the statute to add the residential use requirement in order to clarify that mixed-use structures were excluded from the SCAR program (*see* L 1982, ch 531). Furthermore, the administrative entity then responsible for the State's assessment policies, the former State Division of Equalization and Assessment—now the Office of Real Property Tax Services—had concluded that while regu-

lar nonresidential use disqualified a homeowner, occasional or incidental use for nonresidential purposes did not foreclose access to the SCAR program (*Town of New Castle*, 72 NY2d at 687, citing Opinion letter to Senator Skelos, Feb. 13, 1986).

In light of this legislative history and the attendant administrative construction, the Court concluded that adoption of the occasional use interpretation furthered the legislative interest in reducing burdens for certain classes of homeowners. As this Court explained, owners who occasionally used the residential property for business purposes were similarly situated to owners who used the property exclusively as a residence (*Town of New Castle*, 72 NY2d at 687). As applied to the owners in *Town of New Castle*, the Court had little difficulty concluding that the owners' mere 10 hours of business-related use in the seven months prior to the SCAR proceeding established that their nonresidential use was occasional and incidental, permitting them to seek relief under RPTL 730.

Here, there is no similar legislative history or administrative interpretation to support the Manouels' argument that the "owner-occupied" language should be construed broadly to include the petitioner's non-rent-paying relative. First, the legislature was well aware when it enacted section 730 over 30 years ago in 1981, that the statute, as written, limited its application to owner-occupied residential properties. Indeed, the Association of Towns of the State of New York specifically objected to the proposed bill's distinction between owner-occupied residential properties and non-owner-occupied residential properties (*see* Opinion letter of Association of Towns of St of NY, Oct. 29, 1981, Bill Jacket, L 1981, ch 1022). Moreover, the Governor's Approval Memorandum states that the SCAR "program will be available to owners of one, two or three family owner-occupied residential real property" (*see* Bill Jacket, L 1981, ch 1022, 1981 NY Legis Ann at 528). In light of this legislative history, there is no question that the legislature passed the statute fully intending to distinguish between owner-occupied properties and those not owner-occupied. Second, RPTL 730 has been amended several times since its enactment, and the owner-occupied language has survived each change to the statute.* The resilience of this requirement is further indication that the legislature continues to adhere to

---

* Real Property Tax Law § 730 has been amended multiple times following its enactment in 1981, including within the first two years of its passage (*see*

its initial decision to limit the SCAR program to owner-occupied properties. Third, the most recent amendment in 2012 expanded the definition of owner to persons who occupy the property as a primary residence while a separate entity holds legal title solely for purposes of estate planning and asset protection (*see* L 2012, ch 114). These occupants retain core ownership characteristics essential to the statutory scheme. One class includes beneficiaries "whose real property is held in trust solely for the benefit of such person or persons" (*see* RPTL 730 [1] [i]). The second class consists of partners in noncommercial limited liability partnerships which exist "to hold title solely for estate planning and asset protection purposes and the partner or partners who primarily reside [on the property] personally pay all of the real property taxes and other costs associated with the property's ownership" (RPTL 730 [1] [ii]).

The amendment thus extends coverage to residents who for purposes of the statute are in effect beneficial owners. This careful and limited expansion of the meaning of "owner," which takes into consideration the realities of property ownership in furtherance of estate planning concerns, only further demonstrates the legislature's cautious approach to expansion of the SCAR program, and cannot support the broad interpretation of "owner-occupied" advocated by the Manouels.

Further, unlike the administrative guidance relied on by this Court in *Town of New Castle*, the administrative constructions of the owner-occupied requirement, to the extent they are liberal in nature, demand occupancy by an owner. For example, seasonal use does not disqualify property from SCAR consideration, so long as the owner occupies the property in season (*see* 7 Op Counsel SBEA No. 80 [1982] ["A seasonal residence may qualify for small claims assessment review, provided that during the period it is in use it is occupied by its owner"]; *see also* 9 Op Counsel SBEA No. 94 [1992] [property that was owner-occupied on taxable status date but vacant thereafter "analogous to a seasonal residence" and thus qualifies for SCAR]). The administrative guidance makes clear that lack of occupancy by the owner renders the property ineligible for the SCAR program (*see* 9 Op Counsel SBEA No. 122 [1983] [vacant

L 1982, ch 531, §§ 1-5; L 1982, ch 714, § 21; L 1983, ch 357, § 1; L 1983, ch 735, § 23; *see also* L 1984, ch 473, § 18; L 1985, ch 687, § 2; L 1986, ch 858, § 1; L 1987, ch 221, § 1; L 1991, ch 552, § 1; L 1993, ch 154, § 1; L 1997, ch 517, § 1; L 2003, ch 62, § 1, part J, § 26; L 2003, ch 363, § 1; L 2005, ch 215, § 1; L 2006, ch 556, § 1; L 2010, ch 56, § 1, part W, § 1 [b]; L 2012, ch 114, §§ 1, 2).

property under construction does not qualify for SCAR as "the (owner) has never actually lived in the structure"]).

The history of the SCAR program establishes that its purpose is to address the plight of small homeowners. Limiting access to the SCAR program to owners who occupy their property reasonably restricts the program to those most likely to have limited resources and who are most economically in need of the SCAR program's expeditious and inexpensive procedures. Hence, interpreting "owner-occupied" to mean what it says, namely a property occupied by its owner, is not such a "literal and narrow interpretation[ ]" as to thwart the statutory purpose (*see Town of New Castle*, 72 NY2d at 686).

The Manouels next argue that even if section 730 (1) (b) cannot be interpreted as broadly as they contend, they should be able to avail themselves of the SCAR program because their facts come within the interpretation espoused by the Appellate Division in *Matter of Masters v Board of Assessors* (188 AD2d 471 [2d Dept 1992]). As is the case with the Manouels, the property owner in *Masters* did not occupy the property and permitted a relative to reside in the premises. The Appellate Division concluded that the owner could proceed with a SCAR petition because the relative's occupancy was temporary, while the owner attempted to sell the property (188 AD2d at 471). Assuming, without deciding, that *Masters* propounds an appropriate interpretation of RPTL 730, here the Appellate Division properly determined that there is no evidence in the record to suggest that the Manouels' relative occupied the premises temporarily. Thus, even this suggested construction of the statute is inapplicable to the Manouels' case.

While it is certainly a reasonable and perhaps quite convincing argument that owners of residential noncommercial property occupied solely by the owners' relatives, rent-free, are just as much burdened by formal tax certiorari proceedings and in need of the financial and bureaucratic relief offered by the SCAR program as owners who occupy their property, that argument must be made to the legislature (*see Doctors Council v New York City Employees' Retirement Sys.*, 71 NY2d 669, 674 [1988] ["Where the statute is clear and unambiguous on its face, the legislation must be interpreted as it exists. Absent ambiguity the courts may not resort to rules of construction to broaden the scope and application of a statute" (citation omitted)]; McKinney's Cons Laws of NY, Book 1, Statutes § 94).

Were we to adopt the Manouels' interpretation, and ignore the literal language of the statute and its legislative history, we would invite further unsupportable expansions of the statutory text, and risk judicial encroachment on the legislature's lawmaking role.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

PIGOTT, J. (dissenting). Small claims assessment review (SCAR) is an economical and expeditious vehicle that permits owners of real property to challenge an allegedly "unequal or excessive" assessment so long as "the property is . . . improved by a one, two or three family owner-occupied structure used exclusively for residential purposes" (RPTL 730 [1] [b] [i]). When it was enacted over 30 years ago, SCAR was greeted warmly by real property taxpayers and assessing units alike, and, through the years, our Court has acknowledged that SCAR's statutory provisions should not be afforded a "literal and narrow interpretation[ ]" which would frustrate SCAR's statutory objectives, namely, "expedited and inexpensive review to homeowners" (*Matter of Town of New Castle v Kaufmann*, 72 NY2d 684, 686 [1988]; *see Town of Tonawanda v Ayler*, 68 NY2d 836, 838 [1986]).

In *Town of New Castle*, we rejected a narrow construction of the phrase "used *exclusively* for residential purposes" in a situation where one of the owners had utilized the residence for business purposes, albeit limited (72 NY2d at 687 [emphasis supplied]). We held that the owners should not be denied access to the "simplified assessment procedure based on such incidental use" (*id.*). Given the plain meaning of the statute, we could have easily afforded a strict construction to the word "exclusively" such that SCAR would not have been available to those owners. But we didn't. We acknowledged in *Town of New Castle* that section 730 should not be construed so as to "frustrate [its] statutory objectives" (*id.* at 686).

The majority's narrow interpretation of section 730 (1) (b) (i)'s owner-occupancy requirement constitutes a significant shift from how we have historically interpreted the SCAR statute, and, in my view, requires SCAR hearing officers and the courts to give the SCAR statutes a literal and narrow interpretation in future assessment challenges. Had *Town of New Castle* been decided today utilizing the same narrow construction that the majority has applied to "owner-occupancy," then plainly a different result would have been reached: the homeowner in

*Town of New Castle* would have been denied the benefit of the SCAR procedure.

In a similar vein, the majority's decision calls into question the holding in *Matter of Masters v Board of Assessors* (188 AD2d 471 [2d Dept 1992]). In that case, the petitioner, who was selling his property but did not want to leave the house vacant, allowed his father-in-law to stay in the residence rent-free while it was on the market (*id.* at 471-472). The homeowner in *Masters* did not reside in the house when he challenged the assessment, but the Court, interpreting the statute liberally, held that "petitioner undoubtedly [fell] within the class of those intended to be benefitted by the procedure" (*id.* at 472). In light of the majority's holding, it is doubtful that the petitioner in *Masters*—an owner of the property but certainly not an "occupier" of it—would have been as successful had a similar challenge been brought today.

The majority's decision is clearly a retreat from our prior decisions, and those of the Appellate Division, liberally interpreting the SCAR statute. It makes little sense to force these petitioners to commence a "complex and expensive" formal tax proceeding (*see Ayler*, 68 NY2d at 838) under RPTL article 7 to simply challenge an assessment on a single family home from which petitioners derive no income and which they do not utilize for a business purpose. Because these petitioners are precisely the type of homeowners who are entitled to avail themselves of the SCAR procedure, I respectfully dissent and would reverse the order of the Appellate Division.

Chief Judge LIPPMAN and Judges READ and ABDUS-SALAAM concur; Judge PIGOTT dissents in an opinion; Judges STEIN and FAHEY taking no part.

Order affirmed, with costs.