[49 NE3d 711, 29 NYS3d 242]

GOVERNMENT EMPLOYEES INSURANCE Co. et al., Respondents, v
AVANGUARD MEDICAL GROUP, PLLC, Appellant.

Argued February 10, 2016; decided March 31, 2016

*Steptoe & Johnson, LLP*, New York City (*Charles A. Michael* of counsel), and *Brune & Richard LLP*, New York City, for appellant.

*Rivkin Radler LLP*, Uniondale (*Barry I. Levy, Evan H. Krinick* and *Henry M. Mascia* of counsel) and *Melito & Adolfsen, P.C.*, New York City, for respondents.

24

*Law Offices of Gary I. Fields, PLLC*, New York City (*Gary I. Fields* of counsel), for Medical Society of the State of New York and another, amici curiae.

*Greenberg Traurig, LLP*, New York City (*Carmen Beauchamp Ciparick, Francis J. Serbaroli* and *Anne C. Reddy* of counsel), for New York State Association of Ambulatory Surgery Centers, Inc., amicus curiae.

**OPINION OF THE COURT**

RIVERA, J.

Defendant Avanguard Medical Group, PLLC claims that Insurance Law § 5102 requires a no-fault insurance carrier to pay a facility fee to a New York State-accredited office-based

surgery (OBS) center for the use of its physical location and related support services. We conclude that neither the applicable statutory nor regulatory frameworks mandate payment for OBS facility fees.

## I.

Avanguard is a professional service limited liability company, accredited under New York's Public Health Law as a facility for the provision of OBS, defined as "any surgical or other invasive procedure, requiring general anesthesia, moderate sedation, or deep sedation" performed "in a location other than a hospital" (Public Health Law § 230-d [1] [h]). Its owner is a medical doctor who conducts OBS procedures at Avanguard on patients covered under article 51 of the Insurance Law, enacted as the Comprehensive Automobile Insurance Reparations Act (*see* L 1973, ch 13), commonly referred to as the "No-Fault Law" (*see Pommells v Perez*, 4 NY3d 566, 570 [2005]). The doctor billed for his professional services through Metropolitan Medical & Surgical P.C., and separately billed for facility fees associated with his OBS services through Avanguard. According to Avanguard, the OBS facility fees are a charge for the use of the physical location and equipment, and also include payment for technicians and medical assistants who helped with the surgical procedures.

Plaintiffs, insurers Government Employees Insurance Co.; GEICO Indemnity Co.; GEICO General Insurance Co., and GEICO Casualty Co. (collectively GEICO), paid the doctor's professional fees, but declined reimbursement for the facility fees. GEICO then commenced this action in Supreme Court for a declaratory judgment that GEICO is not legally obligated under Insurance Law § 5102 to reimburse Avanguard for OBS facility fees. The disputed fees total in excess of $1.3 million.

GEICO unsuccessfully moved to stay Avanguard's pending arbitration and judicial actions, and for a preliminary injunction against any new filings (2012 NY Slip Op 31516[U] [Sup Ct, Nassau County 2012]). GEICO thereafter sought summary judgment, which Supreme Court also denied (2013 NY Slip Op 33849[U] [Sup Ct, Nassau County 2013]). The Second Department reversed and granted GEICO's motion for summary judgment declaring GEICO is not required to reimburse Avanguard for OBS facility fees (127 AD3d 60 [2d Dept 2015]). Subsequently the Second Department dismissed GEICO's appeal from the order denying the preliminary injunction as "aca-

demic" (125 AD3d 803, 803 [2d Dept 2015]). We granted leave to appeal from the Appellate Division's order granting GEICO's motion for summary judgment (25 NY3d 907 [2015]).

## II.

Avanguard asserts that pursuant to Insurance Law § 5102 (a) (1), OBS centers may recover a facility fee as a reimbursable "basic economic loss," payable at a rate to be determined in accordance with 11 NYCRR 68.5. We reject Avanguard's interpretation of the No-Fault Law framework, because it would permit Avanguard and other OBS centers to collect facility fees even though these types of fees are not expressly permitted by statute or payment schedules authorized thereby, and regardless of the fact that costs for the use of an OBS center are not reimbursable services under 11 NYCRR 68.5. Moreover, Avanguard's view of the law undermines the obvious legislative purpose behind this framework, to contain costs by subjecting service charges to statutory ceilings and regulatory-fixed rates.

### A. Legal Framework

Our analysis begins, as it must, with the statute. Indeed, "the text of a provision 'is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning' " (*Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities*, 19 NY3d 106, 120 [2012], quoting *Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]). In accordance with the No-Fault Law, automobile insurers, like GEICO, must provide up to $50,000 of coverage for an insured's "basic economic loss" (Insurance Law § 5102 [a]), which includes,

> "[a]ll necessary expenses incurred for: (i) medical, hospital (including services rendered in compliance with article forty-one of the public health law, whether or not such services are rendered directly by a hospital), surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services; (ii) psychiatric, physical therapy (provided that treatment is rendered pursuant to a referral) and occupational therapy and rehabilitation; (iii) any non-medical remedial care and treatment rendered in accordance with a religious method of healing

recognized by the laws of this state; and (iv) any other professional health services" (Insurance Law § 5102 [a] [1]).

Expenses for basic economic loss, as described in this paragraph, "shall be in accordance with the limitations of" Insurance Law § 5108 (*id.*). Section 5108, titled "Limit on charges by providers of health services," authorizes the Chair of the Workers' Compensation Board to adopt fee schedules for basic economic losses, and mandates the Superintendent of the Department of Financial Services, in consultation with the Chair, to establish fee schedules "for all such services" not covered by the Chair's schedules (Insurance Law § 5108 [b]).

Section 5108 also provides that basic economic loss service charges "shall not exceed the charges permissible" under the Chair's schedule, "except where the insurer or arbitrator determines that unusual procedures or unique circumstances justify the excess charge" (Insurance Law § 5108 [a]). Furthermore, a health care provider may not "demand or request any payment in addition to the charges authorized pursuant to this section" under the Chair and Superintendent's fee schedules (Insurance Law § 5108 [c]). Enforcement is, in part, facilitated by mandated self-regulation, which requires an insurer to report to the Commissioner of Health, among other improper conduct, "any patterns of overcharging, excessive treatment or other improper actions by a health provider" (*id.*). As this language illustrates, the legislature sought to cap payments and impose uniform fee rates in accordance with the regulatory schedules.

The Chair and the Superintendent have promulgated fee schedules for a wide variety of reimbursable services (*see* Official New York Workers' Compensation Medical Fee Schedule [eff June 1, 2012] [these services include, among others, allergy/immunology, anesthesiology, critical care, pain management, dermatology, and sports medicine]). This includes facility fees for hospitals and ambulatory surgery centers (ASC) (*see* New York State, Workers' Compensation Board, Health Care Information, 2014 Medical Fee Schedules, http://www.wcb.ny.gov/content/main/hcpp/MedFeeSchedules/2014medfee.jsp [accessed Mar. 3, 2016], cached at http://www.nycourts.gov/reporter/webdocs/2014MedicalFee Schedules.pdf). In addition, the Superintendent has promulgated Regulation 83, codified at 11 NYCRR 68.5, which provides two alternative methods for establishing payment for

a health service, "reimbursable under section 5102(a)(1) . . . but is not set forth in fee schedules adopted or established by the superintendent."

Under 11 NYCRR 68.5, "if the superintendent has adopted or established a fee schedule applicable to the provider, then the provider . . . establish[es] a fee or unit value consistent with other fees or unit values for comparable procedures shown in such schedule" (11 NYCRR 68.5 [a]). In those cases where the

> "superintendent has not adopted or established a fee schedule applicable to the provider, then the permissible charge for [the] service shall be the prevailing fee in the geographic location of the provider subject to review by the insurer for consistency with charges permissible for similar procedures under schedules already adopted or established by the superintendent" (11 NYCRR 68.5 [b]).

As is obvious from its text, the regulation allows payment only for reimbursable services, and is structured to ensure consistency between those payments issued under the regulation, and those made pursuant to the Superintendent's existing fee schedules.

## B. Analysis of Avanguard's Claims

It is undisputed that the fee schedules provide reimbursement for professional services delivered in an OBS setting, and include payment for a doctor's services. It is also undisputed that the schedules do not expressly permit reimbursement for OBS facility fees, but do allow facility fee payments for hospitals and ASCs.

In support of its claim that the statute requires payment of OBS facility fees, Avanguard argues that a suitable facility is necessary to the provision of the surgical services covered by section 5102, and, therefore, costs associated with the facility constitute a "necessary expense" that are part of the reimbursable "basic economic loss." Avanguard notes that arbitrators have awarded payment for OBS facility fees, suggesting that such fees are understood to fall within the statute's intended coverage.

Avanguard's argument misses the mark because the basic economic loss provided for under Insurance Law § 5102 (a) (1)

is subject to the limitations of section 5108, which provides that charges for services "shall not exceed the [permissible] charges" promulgated under the Chair's schedules. Here, no existing schedules provide reimbursement for OBS facility fees. Moreover, since facility fees are specifically mentioned and intended to be paid to hospitals and ASCs, the absence of such language with regard to OBS facilities is no mere oversight.

Avanguard argues alternatively that because the Superintendent has also failed to adopt a fee schedule that includes OBS facility fees, those fees are reimbursable under 11 NYCRR 68.5, which Avanguard claims serves as a catchall for all other services. Avanguard's reliance on the Superintendent's regulation is misplaced because 11 NYCRR 68.5 expressly applies solely to "professional health services" and facility fees are not services. Instead, they are expenses incurred for services. The difference is recognized in section 5102 (a) (1) which provides for reimbursement of expenses for services, and categorizes the types of procedures—e.g., medical, dental, surgical—and includes "any other professional health *services*" (Insurance Law § 5102 [a] [1] [iv] [emphasis added]). Since facility fees are not services, for purposes of 11 NYCRR 68.5, the fees cannot be recouped under the authority of this section.

Moreover, the intent gleaned from the language of 11 NYCRR 68.5 is that reimbursement for *services* should be provided in a manner that ensures consistency and thus inherently limits the range of payment amounts. However, because an OBS facility fee is a separate and recurring cost *associated* with a service, the inclusion of such a fee necessarily produces inconsistent results in total payment amounts within service categories.

To the extent Avanguard argues that based on the surgical and medical services it provides in its facility it should be treated similarly to hospitals and ASCs we note that unlike OBS centers, hospitals and ASCs are regulated under Public Health Law article 28, and are subject to strict standards under the Public Health Law and State Department of Health Regulations that cover, inter alia, facility licensing and maintenance (*see* 10 NYCRR part 446 [detailing the extensive reporting requirements], 10 NYCRR 400.3 [requiring all hospitals and ASCs to maintain and, if required, reproduce any medical report or record]). Their reimbursable facility fees are based on calculations implemented in the fee schedules and include a surcharge imposed by the State Health Care Reform Act (Public

Health Law § 2807-j [1]), which helps subsidize uncompensated care (*see* Governor's Approval Mem at 2, Bill Jacket, L 1996, ch 639, 1996 Legis Ann at 470).

By comparison, OBS facilities are not licensed by New York State or regulated by the Department of Health. Although Public Health Law § 230-d (1) requires that OBS providers meet the standards of a nationally-recognized accrediting agency, the Department of Health does not permit OBS practices to include the terms "facility," "center," or "clinic" as part of the business name (New York State, Department of Health, Office-Based Surgery [OBS] Frequently Asked Questions [FAQ's] for Practitioners, https://www.health.ny.gov/professionals/office-based_surgery/obs_faq.htm [accessed Mar. 2, 2016], cached at http://www.nycourts.gov/reporter/webdocs/Office-BasedSurgery(OBS)FrequentlyAskedQuestions(FAQs)forPractition.pdf). Thus, we agree with the Appellate Division that given these differences between hospitals and ASCs, and OBS centers, there is no basis to interpret the statute to mandate reimbursement for OBS facility fees.

Notably, Avanguard does not challenge the legality of the fee schedules on the ground that the schedules fail to incorporate OBS facility fees. Indeed, Avanguard concedes that the Chair and Superintendent are authorized to promulgate schedules that deny reimbursement. Avanguard simply argues that in order to do so the administrators must expressly disallow payment. We disagree for several reasons. First, there is no statutory duty imposed on the Chair and Superintendent to announce the services and fees they intend to exclude from their schedules. Second, contrary to Avanguard's suggestion, the administrators may exercise their administrative authority through silence, and as such implicitly reject reimbursement for OBS facility fees. Third, it would be unreasonable to interpret the No-Fault Law, which was intended "to establish a quick, sure and efficient system for obtaining compensation for economic loss suffered as a result of [vehicular] accidents" (*Walton v Lumbermens Mut. Cas. Co.*, 88 NY2d 211, 214 [1996]), in a manner that encourages an even greater level of administrative minutia in the promulgation of what already are mathematically technical, complex fee schedules (*see* Official New York Workers' Compensation Medical Fee Schedule [eff June 1, 2012]).

## III.

As the statutory language illustrates, the legislature capped total payments for basic economic loss, and delegated the determination of fee rates to the Chair and the Superintendent. Neither administrator has chosen to include OBS facility fees in the regulatory schedules. It is not for this Court to decide, contrary to Avanguard's contention, whether this is a "good idea" or if it would be better for patients covered by no-fault insurance, and for the efficient management of our health care system, to require reimbursement of OBS facility fees as a means to ensure that OBS facilities continue to be viable options for patients. "These policy determinations are beyond our authority and instead best left for the legislature" (*People v Jones*, 26 NY3d 730, 741 [2016], citing *Matter of Manouel v Board of Assessors*, 25 NY3d 46, 54 [2015]).

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge DiFiore and Judges Pigott, Abdus-Salaam, Stein, Fahey and Garcia concur.

Order affirmed, with costs.