OPINION OF THE COURT
Patrick J. McGrath, J.
The above-named defendant stands charged with the crimes of sexual abuse in the second degree (six counts), in violation of section 130.60 (2), and endangering the welfare of a child, in violation of section 260.10 (1), of the Penal Law.
Defendant has moved to suppress physical evidence consisting of tape-recorded conversations between the defendant and the victim-complainant. The People do not refute the fact that the victim’s parents surreptitiously recorded telephone conversations between the victim and defendant. Therefore, it is undisputed that neither party to the telephone conversation consented to the tape recording. Defendant claims that the tape recording of the phone conversations violated her Federal and State rights to be free from unreasonable searches and seizures and also that the recordings were obtained in violation of the Federal and State eavesdropping laws.
CPL 710.20 (2) provides for suppression of evidence consisting “of a record or potential testimony reciting or describing declarations, conversations, or other communications overheard, intercepted, accessed, or recorded by means of eavesdropping.” Eavesdropping means wiretapping, mechanical overhearing of a conversation, or intercepting or accessing of an electronic communication as those terms are defined in section 250.00 of the Penal Law (CPL 710.10 [4]). Section 250.05 of the Penal Law sets forth the felony crime of eavesdropping.
A person is guilty of eavesdropping when he unlawfully engages in wiretapping, mechanical overhearing of a conversation, or intercepting or accessing of an electronic communication. “Wiretapping” and “mechanical overhearing of a conversation” are specifically defined as the overhearing or recording of a conversation without the consent of at least one party thereto (Penal Law § 250.00 [1], [2]).
CPLR 4506 (1) precludes the admissibility of any tape recordings obtained in violation of section 250.05 of the Penal Law. The proscription of CPLR 4506 is applicable to both criminal and civil trials. The exclusionary provisions apply not simply to eavesdropping evidence unlawfully obtained by law *619 enforcement officers, but also to such evidence “gathered hy any individual” (see, People v Capolongo, 85 NY2d 151, 158).
The People argue that “any individual” should not include the parents of a minor victim. In effect, the People assert that this court should create an exception to the clear statutory language of the penal statute. No doubt the People’s reason for requesting such exception, “the need for and rights of parents to monitor their children’s behavior and relationships,” is an important societal interest; however, courts are bound to construe statutes as they find them and may not sit in review of the discretion of the Legislature or determine the expediency, wisdom or propriety of its action on matters within its powers (People v Friedman, 302 NY 75; McKinney’s Cons Laws of NY, Book 1, Statutes § 73). This court cannot usurp the Legislature’s functions by legislating judicially (People v Friedman, supra, at 79). Case law cited by the People does not lead to a different conclusion.
The People rely on the case of Berk v Berk (95 Misc 2d 33), where the Family Court refused to suppress tape recordings made by a father who surreptitiously recorded conversations between the mother and their minor children. The Family Court refused to suppress the tapes in the custody proceeding even though the tapes were illegally obtained since the court held the best interest of the children should prevail over the exclusionary rule in connection with illegal evidence.
However, the Berk case was reversed by the Appellate Division in Matter of Berk v Berk (70 AD2d 943). The appellate court specifically rejected the best interest argument used by the lower court in denying suppression of the tape pursuant to CPLR 4506. The Court held (at 943) that the “clear and unequivocal intent of the Legislature, as expressed in CPLR 4506 (subd 1), is to exclude illegally obtained wiretap evidence fin any trial, hearing or proceeding before any court.’ ” Therefore, the Court granted suppression of the tape and held that there was ample evidence available to evaluate the best interest of the children “without resorting to illegally obtained recordings of conversations between the mother and her children” (at 944; see also, Matter of Jaeger v Jaeger, 207 AD2d 448, 449, lv denied 84 NY2d 812).
The People also rely on one line of a decision from the Court of Appeals in Matter of Bennett v Jeffreys (40 NY2d 543, 550). In that case, the Court of Appeals dealt with the issue of depriving a natural parent of the custody of a child absent a surrender or abandonment. The Court held that once extraordi *620 nary circumstances were shown then the best interest of the child would be the test to apply in determining custody issues. In talking about a factor not present in the case, the Court indicated that where custody of children is obtained unlawfully society should not reward the lawless conduct because the passage of time has made correction inexpedient. The Court then went on to state the sentence relied upon by the People in the present case: ‘Yet, even then, circumstances may require that, in the best interest of the child, the unlawful acts be blinked” (at 550). This statement by the Court of Appeals had nothing to do with the issue of admissibility of evidence in a criminal trial, where the main issue is the guilt or innocence of the defendant, and not the best interest of a minor (compare, Matter of Diane P., 110 AD2d 354, 358, appeal dismissed 67 NY2d 918). If anything is to be “blinked” in the present case, it must be done by the Legislature and not the court.
The People also cite People v Johnson (250 AD2d 922) and People v Hills (176 AD2d 375) in support of their argument. However, both cases are distinguishable from the facts of our case since in Hills the 15-year-old victim consented to having his conversations with the defendant monitored by the police and in Johnson the 13-year-old victim consented to the police listening to her phone conversation with the defendant. This determinative factor is lacking in our case since the 12-year-old victim-complainant did not consent and was not aware that his parents were listening and taping his phone conversations with the defendant.
This court is bound by the letter of the law, and no matter how laudable the motive of the parents, their conduct was in violation of Penal Law § 250.05, and therefore defendant’s motion to suppress the tape-recorded conversations must be granted.
Turning next to defendant’s motion to dismiss the indictment pursuant to CPL 210.20 (1) (c) and 210.35, a review of the Grand Jury minutes shows that the People admitted the illegal tapes into evidence, played them for the Grand Jury, requested certain witnesses to comment on and explain the content of the tapes, and finally, provided transcripts of the tapes to each grand juror. Since it was clearly improper for the People to do so, the court must determine whether or not the People’s error impaired the integrity of the Grand Jury proceeding and may have resulted in prejudice to the defendant in violation of CPL 210.35 (5).
A dismissal of an indictment under CPL 210.35 (5) should be limited to those instances where prosecutorial wrongdoing or *621 error potentially prejudices the ultimate decision reached by the Grand Jury. The likelihood of prejudice turns on the particular facts of each case, including the weight and nature of the admissible proof adduced to support the indictment and the degree of inappropriate prosecutorial influence or bias (People v Huston, 88 NY2d 400, 409). Where the irregularities in presenting the case to the Grand Jury rise to the level of impairing those proceedings in creating the risk of prejudice, “the indictment [cannot] be permitted to stand even though it is supported by legally sufficient evidence” (People v Calbud, Inc., 49 NY2d 389, 395). “On the question of prejudice to defendant, it has been noted that the Legislature ‘rejected a requirement of actual prejudice in favor of the current provision— requiring only that “prejudice to the defendant may result” ’ (People v Huston, [supra], quoting CPL 210.35 [5] [emphasis in original]; see, People v Sayavong, 83 NY2d 702, 709, 711; People v Wilkins, 68 NY2d 269, 276). Relief under this less than exacting standard may be denied only where there was no possibility that defendant was prejudiced by the” error (People v Butterfield, 267 AD2d 870, 873-874, lv denied 95 NY2d 833).
It is clear from a review of the Grand Jury proceedings that the illegal tapes impaired the integrity of the Grand Jury proceeding and may have resulted in prejudice to the defendant.
The Grand Jury met on two separate dates, September 19 and September 21, 2000. On the September 19th session, the victim-complainant testified before the Grand Jury. During the victim’s testimony the Assistant District Attorney admitted the illegally recorded tapes between the defendant and the victim. Also, the Assistant District Attorney passed out copies of the transcripts of the tapes to each grand juror. The tapes were then played for the Grand Jury and the victim was asked to explain certain portions of the tapes. At one point the Assistant District Attorney stopped the tape to rewind it to play a portion back to the Grand Jury and indicated, “Okay. I’m going to rewind that part. Okay. Listen up closely.” The Assistant District Attorney continuously stopped and started the tape while asking the victim to explain certain portions. The Assistant District Attorney also quoted from the transcript. The Assistant District Attorney on at least two occasions asked the victim to inform the Grand Jury as to what the defendant meant by certain statements on the tapes. The Grand Jury then began its deliberations after being charged by the Assistant District Attorney.
*622 During deliberations the Grand Jury had a question concerning a difference between the actual tape and the transcripts. In response the Assistant District Attorney indicated that she could not correct the transcript, but in referring to the tapes indicated, “I said to listen closely * * * hopefully you heard it and took it for what you heard.” The Grand Jury then continued its deliberations.
Deliberations were again interrupted when the Grand Jury asked the Assistant District Attorney if there were any additional witnesses that could corroborate the victim’s story other than his immediate family. The transcript of the Grand Jury proceeding then indicates that the Assistant District Attorney had a discussion with the Grand Jury off the record. As soon as the Assistant District Attorney went back on the record she indicated, “Okay. Now, some questions were just asked of me. Some are factual things.”
The victim was then recalled as a witness and further examination was conducted by the Assistant District Attorney as well as the grand jurors. Numerous questions were asked of the victim concerning certain statements on the tapes and their meaning. After the victim finished testifying the Assistant District Attorney informed the Grand Jury that if they had more questions and needed more witnesses to let her know. The Assistant District Attorney indicated, “If it takes any other witnesses to corroborate what he said. He, basically, said that it happened, his own testimony. The tapes are in evidence.”
A grand juror then inquired as to what would happen if they only voted to indict on count seven. The Assistant District Attorney initially indicated, “I’m not going to answer that question. I’m not going to answer that question,” and then went off the record. As soon as they were back on the record a grand juror indicated, “You gave us three options.” Deliberations then resumed with the Grand Jury eventually informing the Assistant District Attorney that they could not reach a verdict and wanted to hear from more witnesses.
On the second day of the Grand Jury proceeding, September 21st, the victim’s father testified as well as two investigators from the New York State Police. Before the Assistant District Attorney started questioning the victim’s father, the following colloquy occurred between a grand juror and the Assistant District Attorney:
“juror: I want to see the phone conversation.
“ada: You want to hear it?
*623 “juror: No, I just want to see so I can refer to it.
“ada: You want the transcript? Let me see if I can get those for you.”
A copy of the transcript was then given to each grand juror. The victim’s father testified extensively about the taped conversations as well as creation of the tapes.
The next witness to testify was an investigator from the New York State Police. The investigator had interviewed the defendant. The Assistant District Attorney asked why the investigator asked the defendant certain questions to which the investigator responded, “Because, after listening to the tape-recorded conversations between her, Mrs. Heffner, and the child, I had many questions to ask her; these specifically.” The investigator further testified that, “There were conversations on the tapes between Mrs. Heffner and the child that led me, as a police officer, to feel that an investigation into these conversations was warranted. My experience tells me something may have been going on that needed looking into.”
It is obvious from all of the above that the tape-recorded phone conversations were an integral part of the Grand Jury proceeding and their admission as well as the testimony elicited in relation to the tapes impaired the integrity of the Grand Jury and may have resulted in prejudice to the defendant. This is not a case of an isolated error with otherwise overwhelming proof and therefore no possibility of prejudice to the defendant (compare, People v Hardison, 181 AD2d 506, 507, lv denied 79 NY2d 1050).
Therefore, defendant’s motion to dismiss the indictment, pursuant to CPL 210.20 (1) (c) and 210.35 (5), is granted.
In view of the above, the court need not determine whether the off-the-record conversations by the Assistant District Attorney concerned substantive matters in violation of CPL 190.25 (6), and, if so, whether the violation created the necessary prejudice to trigger the provisions of CPL 210.35 (5) (see, People v Perry, 199 AD2d 889, 894, lv denied 83 NY2d 856; People v Erceg, 82 AD2d 947).
Also, the court need not address any remaining arguments by the defendant.