==================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
------------------------------------------------------------------
No. 2
The People &c.,
           Respondent,
        v.
Anthony Jones,
           Appellant.




           Kristina Schwarz, for appellant.
           Sheila L. Bautista, for respondent.






RIVERA, J.:

        Defendant claims that his due process rights were
violated when the sentencing court refused to consider his
request to defer payment of a mandatary surcharge imposed upon
him pursuant to Penal Law § 60.35.  We conclude that the
applicable statutory scheme provides no such discretion to the

sentencing court, and therefore we affirm the Appellate Division.

I.

Defendant pled guilty to criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]) and criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]).  At sentencing, Supreme Court imposed two concurrent six-month terms of imprisonment, and a $300 mandatory surcharge pursuant to Penal Law § 60.35.  The court rejected defendant's request to defer the surcharge, concluding that it lacked authority to do so.  The Appellate Division affirmed and, as relevant here, held that because defendant was sentenced to a term of incarceration longer than 60 days he could seek relief from the surcharge only in postsentencing proceedings, by way of a motion to resentence, pursuant to CPL 420.10 (5) (115 AD3d 490, 490-491 [1st Dept 2013]).  A Judge of this Court granted defendant leave to appeal (23 NY3d 1038 [2014]).

Defendant claims that CPL 420.40 establishes the procedure for deferral of mandatory surcharges, and because that section does not limit when a person may seek such relief, the sentencing court had authority to consider his request for a deferral.  The People counter that a request to defer may only be considered after sentencing by way of a motion to resentence, and in defendant's case only at the end of his incarceration.  We agree that a court lacks authority at sentencing to consider a

request to defer the mandatory surcharge, but find no statutory support for the People's position that defendant may only seek such relief upon release from confinement.

As discussed more fully below, the relevant statutes prohibit judicial waiver of a mandatory surcharge, require collection of any unpaid amounts from an inmate's funds as of the moment of confinement and throughout the period of incarceration, and provide for deferral under limited circumstances, namely an inability to pay that is not solely due to incarceration. A person subject to a mandatory surcharge may seek to defer payment at any time after sentencing, by way of a motion to resentence under CPL 420.10 (5). In addition, persons sentenced to confinement of 60 days or less, may avoid filing such motion, and instead present information in support of a request to defer on the appearance date set forth on a summons issued pursuant to Penal Law § 60.35 (8). Under either procedural mechanism, if the court grants a deferral it must place its reasons on the record (CPL 420.40 [4]; 420.10 [5] [d]), and issue a written order, which shall be treated as a civil judgment in accordance with CPLR 5016 (CPL 420.40 [5]; 420.10 [5] [d]). This statutory scheme is structured to further the legislative goals of raising revenue and ensuring payment of the mandatory surcharge by persons convicted of crimes.

II.

Mandatory surcharges are referenced throughout the Penal Law and the Criminal Procedure Law, which require close and careful reading to harmonize the various interconnected and cross-referenced provisions.  Indeed, the statutes governing mandatory surcharges have been characterized as "poorly drafted and difficult to follow" (Preiser, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 420.40).  We now turn to these statutes, cognizant that "our primary consideration is to ascertain and give effect to the intention of the Legislature" (People v Ballman, 15 NY3d 68, 72 [2010], quoting Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006] [internal quotation marks and citation omitted]), and that "when the statutory language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of the words" used (People v Williams, 19 NY3d 100, 103 [2012]).

Penal Law § 60.35 (1) states, with exceptions not relevant to this appeal, that for anyone convicted of a felony, misdemeanor or violation "there shall be levied at sentencing a mandatory surcharge . . . in addition to any sentence required or permitted by law, in accordance with the . . . schedule" set forth in this provision.  The statute further provides that

> "when a person who is convicted of a crime or
> violation and sentenced to a term of
> imprisonment has failed to pay the mandatory
> surcharge, . . . the clerk of the court
> shall notify the superintendent or the
> municipal official of the facility where the
> person is confined.  The superintendent or
> the municipal official shall cause any amount

owing to be collected from such person during
[the person's] term of imprisonment from
moneys to the credit of an inmates' fund or
such moneys as may be earned by a person in a
work release program [as provided for under
the correction law]"

(see Penal Law § 60.35 [5]).

In the case of a person sentenced to confinement for 60

days or less,

"at the time that the mandatory surcharge, .
. . is imposed a town or village court may,
and all other courts shall, issue and cause
to be served upon the person required to pay
the mandatory surcharge, a summons directing
that such person appear before the court
regarding the payment of the mandatory
surcharge, . . . if after sixty days from the
date it was imposed it remains unpaid"

(Penal Law § 60.35 [8]).  The summons must set an appearance date

for the first day court is in session after the sixtieth day.

The statute specifically prohibits issuance of such summons "to a

person who is sentenced to a term of confinement in excess of

sixty days," and instead provides that "[t]he mandatory

surcharges for those persons shall be governed by the provisions

of section 60.30" of the Penal Law.  That section states,

"This article does not deprive the court of
any authority conferred by law to decree a
forfeiture of property, suspend or cancel a
license, remove a person from office, or
impose any other civil penalty and any
appropriate order exercising such authority
may be included as part of the judgment of
conviction"

(Penal Law § 60.30).

Initially, courts had authority to waive the

surcharges, but in 1992, in response to apparent judicial laxity in granting such waivers, and in order "to limit what ha[d] become perceived as the routine remission and waiver in some cases of surcharges . . . intended to be mandatory," (Approval Memorandum, Bill Jacket, L 1992, ch 794 at 14 [NY Senate Bill 9031]), the legislature amended CPL 420.35 and included language that courts be "mindful" that the surcharge was mandatory, and of "the important criminal justice and victim services" sustained by the surcharge and other fees (id. at 8 [Recommendation of Senate Committee on Rules]).  Thereafter, with the enactment of the Sentencing Reform Act of 1995, the legislature greatly cabined judicial authority to waive and remit the mandatory surcharge (see L 1995, ch 3).  As amended, CPL 420.35 (2) reads that "[u]nder no circumstances shall the mandatory surcharge . . . be waived," except in cases involving a statutorily defined, albeit discrete, category of defendants, not relevant here.[1] (see CPL 420.35 [2], as amended by L 1995, ch 3, eff. July 1, 1995).  In the same vein, the relevant language in 420.30 (3) provides that

---

[1]The court "shall" waive the mandatory surcharge when: "(i) the defendant is convicted of loitering for the purpose of engaging in prostitution [Penal Law § 240.37] . . .; (ii) the defendant is convicted of prostitution [Penal Law § 230.00]; (iii) the defendant is convicted of a violation . . . in lieu of a plea to or conviction for loitering for the purpose of engaging in prostitution [Penal Law § 240.37] . . . or prostitution [Penal Law § 230.00]; or (iv) the court finds that a defendant is a victim of sex trafficking under [Penal Law § 230.34] or a victim of trafficking in persons under the trafficking victims protection act (United States Code, Title 22, Chapter 78)" (CPL 420.35 [2]).

"[i]n no event shall a mandatory surcharge, . . . be remitted."
Thus, the Legislature could not be clearer in communicating its
intent to restrain the judiciary from discharging a person's
obligation to pay the statutorily imposed amount.

As part of the same 1995 legislative reform package,
the legislature enacted CPL 420.40, titled "deferral of a
mandatory surcharge; financial hardship hearings," which governs,
inter alia, deferral of mandatory surcharges imposed pursuant to
Penal Law § 60.35 (1) (see CPL 420.40, as amended by L 1995, ch
3, eff. July 1, 1995).  This section in no way signaled a
legislative retreat from its commitment to securing payment of
these surcharges and its interest in directing the exercise of
judicial authority.  Quite to the contrary.  For example, CPL
420.40 includes explicit language similar to that previously
contained in CPL 420.35 and 420.30, that when assessing a request
to defer payment "the superior court shall be mindful of the
mandatory nature of the surcharge . . . and the important
criminal justice and victim services sustained by such fees" (CPL
420.40 [3]; see L 1995 ch 3, §§ 67-70).

By its terms, CPL 420.40 "govern[s] the deferral of the
obligation to pay all or part of a mandatory surcharge, . . .
imposed pursuant to subdivision one of section 60.35 . . .  and
financial hardship hearings relating to mandatory surcharges"
(CPL 420.40 [1]).  According to the statute's procedural
requirements, in those cases "[w]here a court determines that it

will defer part or all of a mandatory surcharge," the court's "statement of such finding and of the facts upon which it is based shall be made part of the record" (CPL 420.40 [4]). Furthermore, a court may only defer the mandatory surcharge by written order, and "[s]uch order shall not excuse the person from the obligation to pay the surcharge" (CPL 420.40 [5]). The order shall be filed and entered as a civil judgment, in accordance with CPLR 5016, and subject to collection "in the same manner as a civil judgment" (id.).

CPL 420.40 makes special provision for a person issued a summons under Penal Law § 65.30 (8). In those cases, CPL 420.40 (2) requires that on the appearance date set forth in the summons, such person

> "shall have an opportunity to present on the
> record credible and verifiable information
> establishing that the mandatory surcharge . .
> . should be deferred, in whole or in part,
> because, due to the indigence of such person
> the payment of [the] surcharge . . . would
> work an unreasonable hardship on the person
> or [the person's] immediate family."

The procedural mechanism of CPL 420.40 does not otherwise provide for a time frame in which a person may seek to defer the mandatory surcharge. However, CPL 420.35 (1) provides that "[t]he provisions of section 420.10 . . . governing the collection of fines . . . shall be applicable to a mandatory surcharge . . . imposed pursuant to subdivision one of section 60.35 of the penal law." Thus, a person subject to a mandatory surcharge, which includes those persons, like defendant,

sentenced to confinement in excess of 60 days and who is unable to pay the surcharge, may apply for resentencing, pursuant to 420.10 (5), at any time after the initial sentence has been imposed.  Under that provision, "[i]n any case where the defendant is unable to pay . . . [the person] may at any time apply to the court for resentence.  In such case, if the court is satisfied that the defendant is unable to pay" the court may "[a]djust the terms of payment" (CPL 420.10 [5] [a]).  The power to change the terms necessarily encompasses the power to defer, that is to delay, payment.

Here too, the legislature has been careful to limit judicial discretion to defer payment for those persons who are incarcerated.  The resentencing provision states that a court

> "shall not determine that the defendant is
> unable to pay . . . solely because of such
> defendant's incarceration but shall consider
> all the defendant's sources of income
> including, but not limited to, moneys in the
> possession of an inmate at the time of []
> admission into such facility, funds earned by
> [an inmate] in a work release program . . .,
> funds earned by [an inmate as compensation
> for work performed while incarcerated] and
> any other funds received by [an inmate] or on
> [the inmate's] behalf and deposited with
> [personnel] of the facility where the person
> is confined"

(CPL 420.10 [5]).

Thus, CPL 420.40 and 420.10 together permit any person with an unpaid mandatory surcharge to request a deferral by moving at any time for resentencing pursuant to CPL 420.10 (5), even during a period of incarceration.  If the movant satisfies

the burden of establishing an inability to pay, and a court determines it is appropriate to defer part or all of the mandatory surcharge, the court must place on the record its findings and facts in support thereof and issue a written order in accordance with CPL 420.40 (4) and (5). An individual subject to a summons under Penal Law § 60.35 (8) may similarly request a deferral by motion to resentence or, alternatively, may seek this relief at the scheduled summons appearance date, in accordance with the specific procedure set forth in CPL 420.40 (2). If the court decides to grant a deferral, that decision is also subject to the requirements of CPL 420.40 (4) and (5).

This construction of the statutory framework is supported by the various amendments intended to limit judicial discretion, and to increase the collection of surcharges from persons during periods of confinement and upon release from incarceration. As this Court has previously stated, the fees imposed under Penal Law § 60.35 are related to the "State's legitimate interest in raising revenues" (People v Barnes, 62 NY2d 702, 703 [1984]), and the mandatory surcharge "is paid to the State to shift costs of providing services to victims of crime from 'law abiding taxpayers and toward those who commit crimes' " (People v Quinones, 95 NY2d 349, 352 [2000], quoting Mem of State Executive Dept, 1983 McKinney's Session Laws of NY, at 2356, and citing Penal Law § 60.35 [3]; State Finance Law § 97-bb; Barnes, 62 NY2d 702). That goal is facilitated by

ensuring that collection will be attempted even during periods of confinement.

## III.

The People contend that CPL 420.40 is limited to persons sentenced to confinement for 60 days or less, thus excluding defendant, who was sentenced to an incarceration period in excess of 60 days.  We reject this interpretation because it is contrary to the express language of CPL 420.40 (1), which states, without limitation, that CPL 420.40 governs deferrals imposed pursuant to Penal Law § 60.35 (1).  Nevertheless, the People point to CPL 420.40 (2) as the proper basis to discern the coverage of the statute.  That paragraph applies to persons subject to a summons issued pursuant to Penal Law § 60.35 (8), meaning any person with an unpaid mandatory surcharge who was sentenced to incarceration for 60 days or less and issued a summons to appear on the first court date after the sixtieth day. Rather than serving to establish, a fortiori, that the entirety of the procedures set forth in CPL 420.40 are unavailable to defendant and those similarly situated, CPL 420.40 (2) merely affords persons at liberty the opportunity upon their appearance date to request a deferral of the mandatory surcharge, thus avoiding further penalties, possible incarceration for nonpayment, and civil liability (see CPL 420.35 [1] [permitting incarceration for failure to pay the mandatory surcharge]; CPL 430.40 [5] [providing that the unpaid balance of the mandatory

surcharge, "may be collected in the same manner as a civil judgment"]).  Nor is it proper to treat 420.40 (1) as a single, aberrational reference given that CPL 420.35, titled "Mandatory surcharge and crime victim assistance fee; applicability to sentences mandating payment of fines," states that the provisions of CPL 420.40 "shall be applicable to a mandatory surcharge." These provisions clearly demonstrate the legislative intent to make the procedure set forth in CPL 420.40 applicable to all deferral requests.

Apart from these text-based reasons for rejecting the People's reading of CPL 420.40, the People's interpretation of the statute would contravene the legislative goals by relieving a court in certain cases from compliance with the procedures and guidance contained in CPL 420.40, based on no more than the incarceratory period of the sentence imposed.  It would make little sense for the legislature to enact a statute that exhorts judicial restraint (CPL 420.40 [3]), imposes procedural requirements that mandate creation of a record and issuance of a written order of deferral (CPL 420.40 [4], [5]), further provides that deferral does not excuse the person from the obligation to pay the surcharge, and ensures payment by directing the filing and entry of a civil judgment, but then decline to apply these requirements to all deferral requests.  There is no logical basis for this anomalous result when the overall statutory scheme is structured to secure payments, regardless of the period of time a

person is confined.

The People also argue, again relying on CPL 420.40 (2) and its application to persons who appear after the end of their confinement, that a court is without discretion to consider a request to defer until the end of a defendant's incarceration. This argument fares no better textually. Neither CPL 420.40 nor 420.10 contain such limitation, and 420.10 (5) states explicitly that persons may apply for resentencing "at any time." Moreover, the language of CPL 420.10 (5) (d) demonstrates that the legislature anticipated that a defendant would make an application during confinement and chose to set forth the appropriate standard in such cases. Thus, under CPL 420.10 (5), "a court shall not determine" a person's inability to pay based solely on the fact of incarceration (CPL 420.10 [5]).

While we are persuaded that the statutes do not foreclose deferral prior to release from incarceration, defendant's argument that the sentencing court had authority pursuant to Penal Law § 60.30 to defer the mandatory surcharge is unpersuasive. That section, titled "Civil Penalties," makes no reference to deferral of mandatory surcharges, and instead provides, in relevant part, that the court retains "any authority conferred by law to . . . impose any other civil penalty" and that such order "may be included as part of the judgment of conviction" (Penal Law § 60.30). The import of this language is to permit a court to exercise its preexisting authority to impose

a civil penalty otherwise permitted under the law.  Of course, the mandatory surcharge is already authorized under Penal Law § 60.35, and a judicial deferral of that surcharge is not the equivalent of imposing another civil penalty.

In further support of his argument that he may seek a deferral at the time of sentencing, defendant contends that Penal Law § 60.35 provides for a 60-day "grace period," during which no payment is required, for persons issued a subpoena under section 60.35 (8), and therefore those sentenced to confinement in excess of 60 days should similarly be able to defer payment into the future.  However, as is clear from our discussion, such interpretation does not follow from the text or the legislative history of the mandatory surcharge statutory scheme.  Instead, defendant's interpretation would allow those persons incarcerated for 60 days or less to avoid payment during confinement, undermining the legislative goal to collect mandatory surcharges during the term of incarceration as a means to assist with the funding of victims' services (see Quinones, 95 NY2d at 352, quoting Mem of State Executive Dept, L 1983 Ch 15, at 2356; see State Finance Law § 97-bb [Criminal justice improvement account]).

The different treatment of these two groups furthers the ends of collection by ensuring that those persons released within 60 days will return to court under the mandates of the subpoena issued pursuant to Penal Law § 65.30 (8).  Defendant's

interpretation, in contrast, does nothing to further the collection of the surcharge, and has the potential to defer payment for years in cases of persons sentenced to lengthy periods of incarceration, depriving the State of necessary funds for victims' services.

While the legislature has provided for deferral of the mandatory surcharge, the statutory scheme contemplates that granting such request is neither routine nor common, certainly not for persons in confinement.  As we read the statutes, they are intended to ensure what defendant now seeks to avoid, namely the payment of the surcharge during a defendant's confinement, except in the most unusual and exceptional of circumstances where a defendant's sources of income support a judicial finding of inability to pay any portion of the surcharge.

Defendant urges us to consider that the People's interpretation is bad policy because reliance on CPL 420.10 would be a waste of judicial resources, as it requires defendants who could have sought deferrals at sentencing to proceed through an additional proceeding, likely with assigned counsel.  However, this is also the case for defendants issued a summons pursuant to Penal Law § 60.35 and subject to the procedure set forth in CPL 420.40 (2).  They too must appear at a separate hearing, and may very well be entitled to assigned counsel to avoid incarceration for failure to pay (see People v Smith, 18 NY3d 588, 592 [2012], citing People v Medina, 44 NY2d 199 [1978] and People v Koch, 299

NY 378, 381 [1949]; see CPL 420.35 [1] [permitting incarceration for failure to pay the mandatory surcharge]).  Furthermore, those persons who do not have a credible basis for deferral while incarcerated may have a credible argument for deferral upon release from prison, when they and perhaps others are dependent on such person's financial resources.

Notably, there is no assurance that even under defendant's interpretation judicial resources would not also be expended in cases where a defendant with an order of deferral is subsequently financially able to pay, and an appropriate official seeks access to newly acquired funds to satisfy the defendant's surcharge obligations.  These policy determinations are beyond our authority and instead best left for the legislature (see Manouel v Bd. of Assessors, 25 NY3d 46, 54 [2015] [rejecting argument because it would "risk judicial encroachment on the legislature's lawmaking role," in light of the statutory text and its legislative history]).

Accordingly, the order of the Appellate Division should be affirmed.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Rivera.  Judges Pigott, Abdus-Salaam, Stein and Fahey concur.  Chief Judge DiFiore and Judge Garcia took no part.

Decided February 18, 2016