Stein, J.
(dissenting). The majority holds, in the face of statutes that are silent on the subject, that a parent may vicariously consent for a minor child for the purposes of satisfying the one-party consent requirement contained in New York’s eavesdropping statutes. In so holding, the majority disregards settled principles of statutory interpretation and encroaches on the province of the legislature. I, therefore, dissent.
I.
Defendant was charged with criminal possession of a weapon and assaulting his girlfriend’s six-year-old child, either individually or by aiding and abetting the child’s mother, after the child was badly beaten with a belt in late October 2008. Defendant was also charged with endangering the welfare of the child by hitting the child with his hands and a belt between the months of January and October 2008. At trial, the People sought to introduce into evidence a recording made by the child’s noncustodial father of communications that he overheard through his cell phone after the mother inadvertently answered her cell phone while in her apartment with defendant and the child.
More specifically, the father called the mother’s cell phone several times in succession one day in May 2008, but the mother evidently pressed the “ignore” button repeatedly to *441 send the calls directly to her voicemail. On the father’s fifth or sixth call, the mother’s phone was answered, but no one spoke to him from the other end of the line or otherwise acknowledged the call. Listening through the open line, the father overheard defendant scolding the child, intermittently yelling at the child for supposedly misbehaving, and making reference to the child previously having been hit, as well as threatening to hit the child later that day. After listening for a few minutes — apparently with the understanding that none of the parties at the mother’s apartment were aware that he could overhear or intended for him to hear their communications — the father began recording the conversation and continued to do so for approximately 20 minutes. During that time, the father also called the mother’s landline phone from his work phone, which calls went unanswered, but he made no efforts to contact the authorities. The father turned the recording over to the police more than five months later, only after defendant and the child’s mother were arrested for physically assaulting the child. The question before us on this appeal is whether the trial court erred by permitting the People to introduce at trial this highly prejudicial recording, over defendant’s objection, in connection with the endangerment count.
I.
Pursuant to Penal Law § 250.05, “[a] person is guilty of eavesdropping when he [or she] unlawfully[1] engages in wiretapping, mechanical overhearing of a conversation, or intercepting or accessing of an electronic communication.” “Mechanical overhearing of a conversation” is defined as “the intentional overhearing or recording of a conversation or discussion, without the consent of at least one party thereto, by a person not present thereat, by means of any instrument, device or equipment” (Penal Law § 250.00 [2] [emphasis added]).
In order to deter criminal eavesdropping, CPLR 4506 provides that “[t]he contents of any overheard or recorded communication, conversation or discussion, or evidence derived therefrom, which has been obtained by conduct constituting the crime of eavesdropping, as defined by [Penal Law § 250.05], *442 may not be received in evidence in any trial” or other proceeding, except against the individual alleged to have committed the crime of eavesdropping (CPLR 4506 [1]). “This State exclusionary provision . . . applies ... to [eavesdropping] evidence gathered by any individual, and serves to deter both unlawful governmental conduct and that of private individuals” (People v Capolongo, 85 NY2d 151, 158-159 [1995] [emphasis added]). The rationale underlying the exclusionary rule is this State’s “strong public policy of protecting citizens against the insidiousness of electronic surveillance by both governmental agents and private individuals” {id. at 160; see People v Kramer, 92 NY2d 529, 538-539 [1998]). “New York State has, therefore, responded to the problems raised by electronic surveillance with greater protection than is conferred under Federal law, and continues to assert this strong public policy, through evolving legislation, as technology advances” (Capolongo, 85 NY2d at 160 [emphasis added]).
The majority concludes that the father’s actions in overhearing and recording with his cell phone the oral communications taking place at the mother’s apartment constituted mechanical overhearing within the meaning of the statute. I agree,[2] although I limit my agreement in this regard to the unique facts of this case, specifically, that: (1) the father’s intent to overhear the conversation was not challenged, and the overhearing was undertaken with the understanding that the mother was oblivious to her mistake; and (2) it is not disputed that the mother, defendant, and the child were unaware of the open phone line and, therefore, cannot be presumed to have consented (see generally People v Basilicato, 64 NY2d 103, 115 [1984]). I make no determination as to whether the elements of the statute would be satisfied in another case where it is disputed or not readily discernible whether the answering or placing of a phone call is intentional or inadvertent — such, as where the caller or recipient may suspect that the person on the other line wants them to overhear (for example, to obtain help).
*443 In any event, I cannot agree that the recording here was admissible based on the vicarious consent doctrine. While the majority’s purpose in adopting this theory is a laudable one, I find no basis to conclude that the plain language of the eavesdropping statute, as enacted by the legislature, permits a parent to surreptitiously mechanically overhear or record conversations of his or her minor child — to which the parent is not a party — simply by virtue of the parent-child relationship. In my view, the question of whether a parent may permissibly vicariously consent on behalf of a child for purposes of the eavesdropping laws is one for the legislature, and this Court usurps the legislative prerogative by reading such a doctrine into the Penal Law.
III.
On this appeal, the People argue that we should adopt a “vicarious consent exemption” to Penal Law §§ 250.00 and 250.05, and they urge us to apply that exemption to the facts of this case. The majority adopts the approach advanced by the People and holds that a parent can vicariously consent to mechanical overhearing on the child’s behalf when the parent has a good faith, objectively reasonable basis to believe that undertaking the otherwise prohibited eavesdropping is in the child’s best interests.
The majority asserts that “[t]he analytical core of this case is consent” (majority op at 432). Rather, the true “analytical core of this case” is the application of the precepts of statutory interpretation and judicial deference to legislative concerns that is absent from the majority’s decision (majority op at 432). Our “primary consideration” in matters of statutory interpretation “is to ‘ascertain and give effect to the intention of the [l]egislature’ ” (Riley v County of Broome, 95 NY2d 455, 463 [2000], quoting McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [a], Comment at 177 [1971 ed]). Where statutory language is unambiguous, “ ‘it should be construed so as to give effect to the plain meaning of the words used’ ” (People v Williams, 19 NY3d 100, 103 [2012], quoting People v Finnegan, 85 NY2d 53, 58 [1995], cert denied 516 US 919 [1995]). “A court cannot by implication supply in a statute a provision which it is reasonable to suppose the [legislature intended intentionally to omit; and the failure of the [l]egislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended” (Statutes § 74; see Finnegan, 85 NY2d *444 at 58; People v Tychanski, 78 NY2d 909, 911 [1991]). “Equally settled is the principle that courts are not to legislate under the guise of interpretation” or by reading into a statute an exception that does not exist (Finnegan, 85 NY2d at 58).
The plain language of Penal Law § 250.00 (2) states that “ ‘[m]echanical overhearing of a conversation’ means the intentional overhearing or recording of a conversation or discussion, without the consent of at least one party thereto, by a person not present thereat, by means of any instrument, device or equipment” (emphasis added). Nothing in this definition indicates that the legislature intended to exempt parents from the prohibition against mechanical overhearing conversations between their children and third parties. The absence of such language is even more striking when we consider that the legislature could not have simply ignored the potential implications of the eavesdropping laws in the familial context, given that, “[i]n the private sector, the most prevalent form of illegal eavesdropping occurs in the context of marital or family relations,” including custody disputes and instances of parents intercepting their children’s communications (Electronic Surveillance, Report of the National Commission for the Review of Federal and State Laws Relating to Wiretapping and Electronic Surveillance at 161 [1976]). The legislature’s failure to expressly provide any exemption for parents, or to set forth an expanded definition of “consent” in the statute to include vicarious consent by parents, is a strong indicator that no such special provisions — however beneficial and practical we might consider them to be — were intended (Penal Law § 250.00 [2]; see Finnegan, 85 NY2d at 58; Tychanski, 78 NY2d at 911).
While the majority characterizes its holding as a statutory interpretation of the undefined term “consent” (majority op at 426), it exceeds the legitimate bounds of statutory construction by going far beyond the plain language of the statutory term “consent” to devise a test by which a parent sometimes can vicariously consent on their child’s behalf and at other times cannot. Even assuming, as the majority does, that the legislature intended to permit parents to vicariously consent to eavesdropping for the purpose of protecting their children, there is nothing in the statute or its legislative history to suggest that the legislature intended to limit that right to particular types of situations. The majority’s efforts to confine vicarious consent to apply only within specifically crafted parameters demonstrates the inconsistencies between the *445 doctrine and the statutory language, and negates any attempt to reconcile the majority’s analysis with our well-settled principles of statutory interpretation.
The majority concludes that the legislature could not have intended to abolish “the long-established principle that the law protects the right of a parent or guardian to take actions he or she considers to be in his or her child’s best interests” (majority op at 435). While I do not dispute that parents have, and should have, the right to exercise consent on behalf of their children in many situations, the majority supplies no analogous contexts in which a parent’s ability to do so is based on a judicially-constructed test evaluating the parent’s reasons for so consenting. I find it unlikely that the legislature would endorse such a standard, rather than providing parents with a clear-cut rule by which to measure whether their actions are lawful.
It is true, as the People and the majority point out, that other courts have adopted vicarious consent exemptions to federal and state eavesdropping laws by employing the test adopted by the majority today (see e.g. Griffin v Griffin, 92 A3d 1144, 2014 ME 70 [2014]; Commonwealth v F.W., 465 Mass 1, 986 NE2d 868 [2013]; Pollock v Pollock, 154 F3d 601 [6th Cir 1998]; Thompson v Dulaney, 838 F Supp 1535 [D Utah 1993]; but see State v Williams, 215 W Va 201, 207, 599 SE2d 624, 630 [2004] [“(t)he statute simply contains no vicarious consent exception for minors, and we refuse to find that one exists without a statutory basis to do so”]). However, regardless of whether courts of other jurisdictions have seen fit to judicially engraft the vicarious consent doctrine into their statutes, we are bound by the proviso that “a statute ‘must be read and given effect as it is written by the [l]egislature, not as the court may think it should or would have been written if the [l]egislature had envisaged all the problems and complications which might arise’ ” (Tychanski, 78 NY2d at 911, quoting Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 548-549 [1983]).
Indeed, prior to the Appellate Term’s decision in People v Clark (19 Misc 3d 6 [App Term, 2d Dept, 2d & 11th Jud Dists 2008], lv denied 10 NY3d 861 [2008]), relied on by the majority, it was long understood that the statutory language of Penal Law §§ 250.00 and 250.05 did not support use of the vicarious consent doctrine in New York in the eavesdropping context. For example, in Matter of Berk v Berk, the Second Department held that tape recordings made by a father of a mother’s *446 conversation with the child must be suppressed as illegally obtained, noting that “[a]mple evidence is available to evaluate the best interests of the children without resorting to illegally obtained recordings of conversations between the mother and her children” (70 AD2d 943, 944 [2d Dept 1979]; see Matter of Jaeger v Jaeger, 207 AD2d 448, 449 [2d Dept 1994] [“it was error to admit the recording of the conversation between the father and the son”], lv denied 84 NY2d 812 [1995]; I.K. v M.K., 194 Misc 2d 608, 611 [Sup Ct, NY County 2003] [statute contained no exception by which father could consent to recording on behalf of children]; People v Heffner, 187 Misc 2d 617, 618-619 [Rensselaer County Ct 2001] [rejecting vicarious consent doctrine]). Notably, the legislature, which has amended Penal Law § 250.00 since the adoption of the vicarious consent exemption by other states and subsequent to the rejection of the doctrine by courts of our state, has not sought fit to expressly incorporate that doctrine, in general — let alone the test now endorsed by the majority — into the statutes.
There can be no question that the prevention of child abuse, the protection of children, and the promotion of child welfare are paramount concerns of parents, the courts, and the legislature. To be sure, the primacy of such concerns may very well justify the relaxation of eavesdropping prohibitions in the context of parent-child relationships. However, as the majority recognizes in addressing various criticisms of the vicarious consent doctrine — such as the potential for misuse by parents, concern for a child’s privacy interests, and the possible increase in family discord — the determination of whether a parent should lawfully be allowed to vicariously consent for a child in order to record a conversation to which a child is a party, without the actual consent or knowledge of any parties to that conversation, is fraught with policy concerns and requires the balancing of competing societal interests, a task more appropriately left to the legislature, particularly in light of the statutory silence on the issue.
In that regard, while I appreciate the instinctive desire to permit a parent to listen to, and perhaps even record, a conversation such as the one at issue here, surreptitiously or otherwise, we must be mindful that the circumstances presented here will not be the only — or even the most common— type of situation to which the majority’s holding will apply. For example, parents in the midst of bitter custody disputes will now be less deterred from eavesdropping on and recording *447 their children’s conversations with the other parent, incentivized by the possibility of obtaining admissible evidence prejudicial to the other parent. The ability to obtain evidence in this manner — evidence which, aside from two recent appellate decisions, has heretofore been deemed inadmissible in New York court proceedings — will undoubtedly lead to increased familial tension, escalation of hostility in divorce and custody proceedings, and will result in mini-trials regarding whether the evidence is admissible, thereby further prolonging such disputes, all to the detriment of the children, themselves.[3] Whether these concerns are outweighed by the benefits of permitting parents to consent to eavesdropping for their minor children is a “policy determination [ ] . . . beyond our authority and instead best left for the legislature” (People v Jones, 26 NY3d 730, 741 [2016]). I note only that a legislative intent militating in favor of the majority’s holding is difficult to discern from the broad statutory language prohibiting eavesdropping and the absence of any language supporting this new qualification to the statutes.
In my view, the limitation placed by the majority on the vicarious consent doctrine — namely, the supposedly “narrowly tailored” good faith, objectively reasonable, best interest test— does not adequately circumscribe the plethora of communications that can be molded and manipulated to fit within its framework (majority op at 426). Given the sheer variety and numerosity of the types of situations in which the vicarious consent doctrine may be implicated — including, among others, divorce and custody disputes, criminal proceedings against the third party or the minor, juvenile delinquency and person in need of supervision proceedings, and any other dispute involving intra-family relations — the determination of whether such a doctrine, unmentioned in the Penal Law, is consistent with the State’s approach to eavesdropping is complicated and policy-laden. As this Court recognized over two decades ago, “eavesdropping has grown more simple and yet infinitely more *448 complex in the modern communication age” (Capolongo, 85 NY2d at 158). The extent to which a parent may consent for a minor child, and under what circumstances such consent is sufficient to outweigh the State’s established interest in deterring the covert interception of private conversations, is a matter for the legislature, not this Court.
Finally, even assuming that the legislature did intend for us to judicially define “consent” in Penal Law § 250.00 (2) as articulated by the majority today, I would not apply the vicarious consent doctrine in this case. Although there can be no question that defendant’s manner of speaking to the child w;as inexcusable and, under different circumstances may very well fall within the confines of the test adopted by the majority, the father’s exact testimony when asked whether he feared for his child’s safety was, “I didn’t think [defendant] would ever put my son in that kind of harm. Yes, the tone was getting louder and louder as I listened, but as far as physically, no, I didn’t think he was being harmed like that.” From my perspective, this testimony, combined with the father’s failure to contact authorities to prevent harm from befalling the child at that time or at any point over the next five months, casts doubt on the father’s “good faith” basis for listening to or recording the conversation.
Indeed, the circumstances of this case are a prime example of the difficulty inherent in applying the majority’s new test. The majority emphasizes that eavesdropping is permissible through vicarious consent only in limited circumstances, pointing out that the Sixth Circuit in Pollock remanded the matter for closer inspection of whether the mother’s real motive was concern for her child’s best interests or retaliation for the father’s own dalliances in eavesdropping (see majority op at 434, 436). Yet, in concluding that the father vicariously consented for the child here, the majority minimizes the father’s own subjective stated lack of concern for his child’s welfare, as well as the surrounding circumstances indicating that the recording may not have been obtained in good faith. In fact, the test adopted by the majority today may ultimately turn out to be an ineffectual one because courts will likely be loathe to reject evidence relevant to the welfare of a child, now that it may be admissible, even if procured in bad faith.
In sum, I conclude that the legislature’s failure to address the matter of vicarious consent in the statute, as evidenced by its plain language, indicates that the legislature did not intend *449 to incorporate such a doctrine into the term “consent” (see Penal Law § 250.00 [2]). Thus, regardless of our views as to the social benefits or drawbacks of permitting parents to lawfully eavesdrop on their children, ultimately, this is not our decision to make. Accordingly, I would hold that, under the particular circumstances of this case, the father procured the recording in violation of Penal Law § 250.05 and, consequently, admission of the highly-prejudicial tape at defendant’s trial contravened CPLR 4506. For these reasons, I would, at the very least, reverse defendant’s conviction for endangering the welfare of a child.
Chief Judge DiFiore and Judges Pigott and Garcia concur; Judge Stein dissents in an opinion in which Judges Rivera and Abdus-Saeaam concur.
Order affirmed.

1. The term “unlawfully,” as used in the eavesdropping statute, means that the wiretapping or mechanical overhearing is “not specifically authorized” by CPL articles 700 and 705, which govern the issuance of eavesdropping and video surveillance warrants and orders authorizing the use of a pen register or a trap and trace device (Penal Law § 250.00 [8]).

. While the majority focuses on the recording, I note that Penal Law §§ 250.00 and 250.05 criminalize both the mechanical “overhearing” and the mechanical “recording” of conversations to which an individual is not a party without the requisite consent. Thus, the father’s conduct of maintaining the open phone line and listening to the communications is, itself, a violation of the statutes and no distinction need be drawn here between that act and the act of recording.

. For example, while the majority asserts that the child’s age is a factor to be taken into account, its holding raises, but does not answer, the question of whether a parent’s vicarious consent can override that of an older child who explicitly refuses to allow a parent to listen in or record a conversation with the other parent. Furthermore, the majority’s holding does not apply only to situations in which the third party to the conversation is the child’s other parent or stepparent. For instance, it can logically be extended to conversations between teenagers and their friends, as well as anyone else with whom the minor interacts.